AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
INFORMATION ASSOCIATED WITH INSTAGRAM )   Case No.   23-MR-2115
ACCOUNT " lilblackout" STORED AT PREMISES )
CONTROLLED BY META PLATFORMS, INC. )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incoporated by reference.

located in the _____ District of   Northern District of California  , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1153 | Offenses committed in Indian Country |
| 18 U.S.C. § 1111 | First Degree Murder |
| 18 U.S.C. §§ 5031 | Juvenile Delinquency Act |

The application is based on these facts:

See attached Affidavit, submitted by SA Lorraine Hardy and approved by AUSA Zach Jones.

☑ Continued on the attached sheet.

☑ Delayed notice of  30  days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Lorraine Hardy, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
 Telephonically Sworn and Electronically Signed   *(specify reliable electronic means)*.

Date:    11/9/2023

_____
Judge's signature

City and state:  Farmington, New Mexico       B. Paul Briones, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH INSTAGRAM USER ID "lilblackout," STORED AT PREMISES CONTROLLED BY INSTAGRAM, INC. c/o META PLATFORMS, INC. | Case No. _____ <br><br> **Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Lorraine Hardy, being duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain Instagram account that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), an electronic-communications service and/or remote-computing service provider headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Meta to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2. I currently serve as an FBI Special Agent assigned to the FBI, Albuquerque Division, Farmington Resident Agency, where I primarily investigate crimes that occur in Indian Country to include homicide, aggravated assault, child sexual assault, kidnapping, and rape. I have

1

been with the FBI for approximately five years. I have received on the job training from other experienced agents, detectives, Indian Country criminal investigators, and tribal police officers. My investigative training and experience includes processing crime scenes, conducting surveillance, interviewing subjects, targets, and witnesses, writing affidavits for and executing search and arrest warrants, examining cellular telephones, managing confidential human sources and cooperating witnesses/defendants, serving subpoenas, collecting and reviewing evidence, and analyzing public records.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe Justen Puerto ("PUERTO") and other persons yet unknown, have violated federal criminal law, namely, 18 U.S.C. §§ 1153 and 1111, First and/or Second-Degree Murder in Indian Country, and 18 U.S.C. §§ 5031 *et seq.*, Juvenile Delinquency Act. There is also probable cause to search the information described in Attachment A for Instagram account "lilblackout" for evidence of these crimes as further described in Attachment B.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States…that has jurisdiction over the offense being investigated" that is, potential violations of 18 U.S.C. §§ 1153 and 1111, First

2

and/or Second-Degree Murder in Indian Country, and 18 U.S.C. §§ 5031 *et seq.*, Juvenile Delinquency Act.

## PROBABLE CAUSE

6.      On August 7, 2023, at approximately 6:00 p.m., the Jicarilla Apache Police Department ("JAPD") responded to a report of a shooting on East Side Street in Dulce, New Mexico, which is located within the Jicarilla Apache Reservation. I was informed by a JAPD criminal investigator ("CI"), that he responded to the location and found the deceased body of the victim (hereinafter JOHN DOE), year of birth 2007, lying in the street with seven spent .40 caliber shell casings around JOHN DOE's body. Upon further examination, the JAPD CI observed multiple entry and exit wounds on JOHN DOE's body that appeared to be bullet holes. Based on his training and experience, the JAPD CI believed JOHN DOE was murdered by gunfire and treated the incident as a homicide.

7.      Through a joint investigation by JAPD and the FBI, I learned JOHN DOE's family members and other Dulce residents believed an individual named Justen Puerto (hereinafter PUERTO), year of birth 2008, was responsible for the murder of JOHN DOE. At approximately 11:00 p.m., JAPD received a tip that PUERTO was presently at 16 Onate Street in Dulce, the residence of his girlfriend (hereinafter H.L.), year of birth 2007, and H.L.'s mother (hereinafter M.L.), year of birth 1982. Shortly thereafter, JAPD and the FBI went to 16 Onate Street; JAPD apprehended PUERTO.

8.      Based on PUERTO's date of birth, I believed he was approximately 15 years old. PUERTO said he lived with his grandmother (hereinafter L.W.), year of birth 1957. L.W. stated she is PUERTO's legal guardian. On August 8, 2023, at approximately 12:03 a.m., PUERTO was provided his *Miranda* warnings in the presence of L.W. He stated he understood his rights and

3

agreed to speak with law enforcement. PUERTO stated he was friends with JOHN DOE and that he heard from multiple sources that JOHN DOE was killed on the evening of August 7, 2023. PUERTO stated that prior to the murder he was with his older brother, Travis Begaye, Jr. (hereinafter BEGAYE), year of birth 2004, hiking on the reservation. After finishing their hike, PUERTO and BEGAYE were walking back and heard nearby gunshots. PUERTO and BEGAYE ran away from the sound of gunshots and went to a family member's house. Eventually, PUERTO and BEGAYE managed to get back to L.W.'s house. On August 7, 2023, at approximately 7:30 p.m., PUERTO called his girlfriend, H.L., and arranged to have her mother, M.L., pick PUERTO up from his residence and take him to her residence at 16 Onate Street. PUERTO stated he did not have a firearm and was not of age to purchase one. PUERTO stated he did not know who shot JOHN DOE. PUERTO provided his cellular-telephone number as (575) 419-0643.

9. On August 8, 2023, at approximately 12:45 a.m., FBI spoke with BEGAYE near 16 Onate Street. BEGAYE's date of birth is December 15, 2004, meaning he was 18 years old at the time of the interview. During our conversation, BEGAYE stated he heard JOHN DOE was dead and BEGAYE knew that JOHN DOE and PUERTO were close friends. BEGAYE said he tried to see and speak with PUERTO early in the day on August 7, 2023, but PUERTO's vibe seemed off. BEGAYE informed us that he did not see PUERTO on August 7, 2023, and that he did not go on a hike with PUERTO. BEGAYE further stated that on August 7, 2023, he received three Instagram voice calls from PUERTO around the time PUERTO said they were on a hike. BEGAYE provided PUERTO's Instagram handle as "Smokedoutkyd." BEGAYE does not currently have a telephone, but PUERTO was able to contact BEGAYE through BEGAYE's girlfriend's cellular telephone. During the first call, PUERTO told BEGAYE that he had a plan to make some money. During the second call, PUERTO told BEGAYE that PUERTO successfully

4

made money that afternoon. During the third call, PUERTO called BEGAYE and said he had "fucked up." BEGAYE said PUERTO sounded like he was crying during the phone call and was questioning whether what happened was worth the money he made. BEGAYE believed PUERTO was involved in the murder of JOHN DOE.

10. On August 8, 2023, after speaking with H.L., FBI requested PUERTO's cellular telephone for evidentiary purposes. PUERTO said his cellular telephone was lost approximately a week before. PUERTO stated he now uses Instagram to voice call people, or he uses H.L.'s cellular telephone. PUERTO then opened H.L.'s cellular telephone and showed the recent call history to FBI. There appeared to be calls between H.L. and PUERTO's contact, which was saved as "Justen" with a blue heart symbol, as recently as August 7, 2023. H.L. and M.L. consented to the FBI taking custody of H.L.'s cellphone telephone and examining its contents.

11. On August 8, 2023, the aforementioned JAPD CI received an Instagram video from a JAPD Officer whose daughter is friends with PUERTO on Instagram. The Instagram video depicted PUERTO near River Road Platform in Dulce, which is less than a mile from the scene of the shooting, firing a black handgun into the air. The Instagram video was posted on the day of the shooting from H.L.'s Instagram handle (the handle is known to Affiant but is withheld because it reveals H.L.'s identity). PUERTO was wearing a black hoodie, white or light-colored jeans, black shoes, and a black beanie hat in the video. Later, JAPD retrieved three 40-caliber casings in the same area the video was filmed. The 40-caliber casings were the same manufacturer as the 40-caliber casings found at the crime scene (Federal Ammunition). The casings were collected and entered into evidence for ballistic examinations at a later date.

12. H.L was interviewed a second time on August 11, 2023, by the FBI. It was learned H.L. filmed the Instagram video of PUERTO near River Road Platform shooting the firearm a

5

week prior to the crime at issue. H.L. utilized her cellular device to film the video and upload the video to her Instagram account. H.L. was also aware PUERTO had a black handgun, the make and model of which she did not know. Puerto kept the handgun in a dark-colored duffle bag. H.L. also disclosed PUERTO came over to her residence the evening after the incident and while in H.L.'s bedroom PUERTO told H.L. that he "did it." H.L. believed PUERTO was referring to the shooting death of JOHN DOE, which occurred earlier that day.

13.  JOHN DOE's friend (hereinafter E.L.), year of birth 2006, was interviewed by law enforcement. E.L. stated PUERTO walked up to him during school on the day of the incident and said, "I'm gonna make my mark today." E.L believed that meant PUERTO was going to kill someone. After school, PUERTO walked up to E.L. and JOHN DOE and arranged to make "a deal" after school. E.L. stated both PUERTO and JOHN DOE sold illegal drugs and the deal PUERTO made with JOHN DOE was for $600 and some vapes. E.L. believed PUERTO was acting weird and told JOHN DOE not to do the deal with PUERTO. E.L. believed PUERTO was jealous of JOHN DOE. E.L and JOHN DOE hung out after school until approximately 4:30 P.M. E.L. left for football practice and JOHN DOE went to meet PUERTO for their arranged deal. When E.L. arrived home later that night he heard about the shooting and immediately believed PUERTO killed JOHN DOE. E.L. confirmed JOHN DOE used Instagram to communicate with other classmates, including he and PUERTO. E.L. provided JOHN DOE's Instagram handle as "85.136rs" and PUERTO's Instagram handle as "gfolks." E.L. stated PUERTO had multiple Instagram accounts and changed them often.

14.  On August 9, 2023, Dulce High School Administration notified the aforementioned JAPD CI they were conducting an internal investigation into multiple statements received by students that PUERTO had threatened them on August 3 and 4, 2023. One student (hereinafter

6

D.L.T.), year of birth 2006, stated PUERTO told him "You better watch your back or this 40 is gonna bite you." PUERTO gestured with his hand and finger, signifying a gun. Later, PUERTO passed D.L.T. in the hallway and said, "you better watch this 40 and quit acting like a bitch and keep walking."

15. Another student (hereinafter D.J.T.), year of birth 2007, stated PUERTO approached him at school and pointed a finger in D.J.T.'s face and said, "tell your brother he better watch out for that 40." D.L.T. and D.J.T. are brothers.

16. Dulce High School security personnel later discovered video security footage from the day of the incident. In this footage, PUERTO is seen walking up to E.L. and JOHN DOE outside school. The video was observed by law enforcement. The three parties appeared to be talking. The interaction appeared amicable. After a short amount of time PUERTO walked off.

17. On August 9, 2023, the aforementioned JAPD CI conducted a witness interview of M.T., year of birth 1984. M.T. lives next to the crime scene. M.T. was driving to Chama at approximately 5:43 PM and saw PUERTO, JOHN DOE, and who she believed to be BEGAYE standing in the road talking. M.T. worked at the Department of Youth Summer Program and knew PUERTO and JOHN DOE. M.T.'s boyfriend (hereinafter P.A.), year of birth 2003, was driving with her and recognized BEGAYE and knew him as PUERTO's brother. PUERTO was wearing a black hoodie with white graphics and black pants. BEGAYE was also dressed in all black and wore a black COVID face mask. Both PUERTO and BEGAYE had stern looks on their faces. JOHN DOE looked at M.T. as she drove by and appeared to be scared. M.T. and P.A. saw the group, including PUERTO and JOHN DOE, just minutes before JAPD received the call of a shooting at that location.

7

18. On October 27, 2023, the aforementioned JAPD CI conducted a witness interview of O.S., year of birth 2003. O.S. was friends with BEGAYE and stated they were involved in a motor-vehicle crash prior to August 7, 2023. O.S. was in Albuquerque on August 7, 2023, for a doctor's appointment for his injuries. O.S. was staying at the Nativo Hotel and received a phone call from BEGYAE at approximately 10:00 PM on Instagram. O.S. believed BEGAYE sounded scared. BEGAYE told O.S. that PUERTO had shot and killed JOHN DOE. O.S. stated BEGAYE called from Instagram account ID "lilblackout." O.S. had not spoken with BEGAYE since the incident.

19. Based on statements made by witnesses and information obtained from law enforcement during this investigation, the Instagram User ID "lilblackout" may have been used by BEGAYE (PUERTO's brother, with whom PUERTO claims he was with when the shooting occurred) on or around the time of the crime. Because BEGAYE and PUERTO are brothers and because PUERTO has claimed to have been with BEGAYE when the crime occurred, it stands to reason that PUERTO and BEGAYE may have communicated electronically to set up their meeting and "deal" on the day of the crime. Thus, I believe the information and media associated electronically with the Instagram account "lilblackout," which was used by BEGAYE soon after DOE's murder, may contain evidence of such crime. This warrant authorizes a review of that electronically stored media and information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities of the commission of the crime.

20. The incident under investigation occurred within the exterior boundaries of the Jicarilla Apache Indian Reservation. PUERTO, BEGAYE, and JOHN DOE are enrolled members of the Jicarilla Apache Tribe.

## BACKGROUND CONCERNING INSTAGRAM [1]

21. Instagram is a service owned by Meta, a United States company and a provider of an electronic-communications service as defined by 18 U.S.C. §§ 3127(1) and 2510.

22. Specifically, Instagram is a free-access social-networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the target account listed in Attachment A, through which users can share messages, multimedia, and other information with other Instagram users and the public.

23. Meta collects basic contact and personal identifying information from users during the Instagram registration process. This information, which can later be changed by the user, may include the user's full name, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, credit card or bank account number, and other personal identifiers. Meta keeps records of changes made to this information.

24. Meta also collects and retains information about how each user accesses and uses Instagram. This includes information about the Internet Protocol ("IP") addresses used to create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

25. Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users can have the same usernames at the same time. Instagram users can create multiple accounts and, if "added" to the primary account, can switch between the associated accounts on a device without having to repeatedly log-in and log-out.

---

[1] The information in this section is based on information published by Meta on its Instagram website, including, but not limited to, the following webpages: "Privacy Policy," https://privacycenter.instagram.com/policy/; "Information for Law Enforcement," https://help.instagram.com/494561080557017; and "Help Center," https://help.instagram.com.

9

26.  Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Facebook account. Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality. For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter account or post it to a connected Facebook account or transfer an image from Instagram to a connected image printing service. Meta maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Meta and third-party websites and mobile apps.

27.  Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers). Users can also "block" other users from viewing their posts and searching for their account, "mute" users to avoid seeing their posts, and "restrict" users to hide certain activity and prescreen their comments. Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

28.  Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Meta to access the contact lists on their devices to identify which contacts are Instagram users. Meta retains this contact data unless deleted by the user and periodically syncs with the user's devices to capture changes and additions. Users can similarly allow Meta to search an associated Facebook account for friends who are also Instagram users. Users can also manually search for friends or associates.

29.  Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers, depending on

privacy settings. Users can customize their profile by adding their name, a photo, a short biography ("Bio"), and a website address.

30. One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos. Users can upload photos or videos taken with or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location. These appear as posts on the user's profile. Users can remove posts from their profiles by deleting or archiving them. Archived posts can be reposted because, unlike deleted posts, they remain on Meta's servers.

31. Users can interact with posts by liking them, adding or replying to comments, or sharing them within or outside of Instagram. Users receive notification when they are tagged in a post by its creator or mentioned in a comment (users can "mention" others by adding their username to a comment followed by "@"). An Instagram post created by one user may appear on the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

32. An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours. Stories are automatically saved to the creator's "Stories Archive" and remain on Meta's servers unless manually deleted. The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

33. Instagram allows users to broadcast live video from their profiles. Viewers can like and add comments to the video while it is live, but the video and any user interactions are removed from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

34.     Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups. These messages may include text, photos, videos, posts, videos, profiles, and other information. Participants to a group conversation can name the group and send invitations to others to join. Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings. Senders can't view their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot. Instagram Direct also enables users to video chat with each other directly or in groups.

35.     Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform as well as on Facebook and other associated websites and apps. Instagram collects and retains payment information, billing records, and transactional and other information when these services are utilized.

36.     Instagram has a search function which allows users to search for accounts by username, user activity by location, and user activity by hashtag. Hashtags, which are topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily searchable and can be "followed" to generate related updates from Instagram. Meta retains records of a user's search history and followed hashtags.

37.     Meta collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Meta to personalize and target advertisements.

38. Meta uses information it gathers from its platforms and other sources about the demographics, interests, actions, and connections of its users to select and personalize ads, offers, and other sponsored content. Meta maintains related records for Instagram users, including information about their perceived ad topic preferences, interactions with ads, and advertising identifiers. This data can provide insights into a user's identity and activities, and it can also reveal potential sources of additional evidence.

39. In some cases, Instagram users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

40. For each Instagram user, Meta collects and retains the content and other records described above, sometimes even after it is changed by the user (including usernames, phone numbers, email addresses, full names, privacy settings, email addresses, and profile bios and links).

41. In my training and experience, evidence of who was using Instagram and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

42. For example, the stored communications and files connected to an Instagram account may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, voice messages, photos, videos, and documents are often created

13

...

and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

43. I believe the information and media stored electronically on the Instagram account "lilblackout" may reveal the account subscriber's identity and or involvement in the shooting on August 7, 2023. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Meta can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, messaging logs, photos, and videos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

44. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (*e.g.*, information indicating a plan to commit a crime), or consciousness of guilt (*e.g.*, deleting account information in an effort to conceal evidence from law enforcement).

45. Other information connected to the use of Instagram may lead to the discovery of additional evidence. For example, associated and linked accounts, stored communications, photos, and videos may reveal services used in furtherance of the crimes under investigation or services

used to communicate with co-conspirators. In addition, stored communications, contact lists, photos, and videos can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

46. Therefore, Meta's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Instagram. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## CONCLUSION

47. Based on the forgoing, I request this Court issue the proposed search warrant.

48. Pursuant to 18 U.S.C. § 2703(g), the presence of a law-enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Instagram. Because the warrant will be served on Instagram, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

49. Assistant United States Attorney Zach Jones reviewed and approved this application on November 9, 2023 at 8:06 AM.

Special Agent Rainy Hardy
Federal Bureau of Investigation

Electronically SUBSCRIBED and telephonically SWORN to me this 9th day of November, 2023.

HONORABLE B. Paul Briones
United States Magistrate Judge

15

## ATTACHMENT A

### Account to Be Searched

This warrant applies to information associated with Instagram User ID "lilblackout," active on, but not limited to, July 24, 2023, through present day, that is stored on servers owned, maintained, controlled, or operated by Meta Platforms, Inc. a company headquartered in Menlo Park, California, including information located on servers that are not physically located within the United States, but which are nonetheless owned, maintained, controlled, or operated by Meta Platforms, Inc.

Meta / Instagram shall disclose responsive data, if any, by sending to Special Agent Rainy Hardy, 215 West Elm Street, Farmington, New Mexico, 87401 using the U.S. Postal Service or another courier service, or via electronic communication to lhardy@fbi.gov.

1

## Attachment B

## Particular Things To Be Seized – Meta Platforms, Inc. ("Meta")

**I. Information to be disclosed by Instagram / Meta:**

To the extent that the information described in Attachment A is within the possession, custody, or control of Instagram, including any messages, records, files, logs, or information that have been deleted but are still available to Instagram, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Instagram is required to disclose the following information to the government for each account listed in Attachment A from July 24, 2023, through current:

a. All identity and contact information, including full name, e-mail address, physical address (including city, state, and zip code), date of birth, gender, hometown, occupation, and other personal identifiers;

b. All past and current usernames, accounts passwords, and names associated with the accounts;

c. The dates and times at which the accounts and profiles were created, and the Internet Protocol ("IP") address at the time of sign-up;

d. For the time period set forth in Section II, all IP logs and other documents showing the IP address, date, and time of each login to the accounts, as well as any other log file information;

e. For the time period set forth in Section II, all information regarding the particular device or devices used to login to or access the account, including all device identifier information or cookie information, including the date and time of those accesses;

f. All data and information associated with the profile page, including photographs, "bios," and profile backgrounds and themes;

g. For the time period set forth in Section II, all communications or other messages sent or received by the account;

h. For the time period set forth in Section II, all user content created, uploaded, or shared by the account, including any comments made by the accounts on photographs or other content;

i. All photographs and images in the user gallery for the account;

2

j. All location data associated with the account, including geotags;

k. All data and information that has been deleted by the user;

l. A list of all of the people that the user follows on Instagram and all people who are following the user (*i.e.*, the user's "following" list and "followers" list), as well as any friends of the user;

m. A list of all users that the accounts have "unfollowed" or blocked;

n. All privacy and accounts settings;

o. All records of Instagram searches performed by the account, including all past searches saved by the account;

p. For the time period set forth in Section II, all information about connections between the accounts and third-party websites and applications;

q. All records pertaining to communications between Instagram and any person regarding the user or the user's Instagram account, including contacts with support services, and all records of actions taken, including suspensions of the account.

Meta is ordered to disclose the above information to the government within 14 days of issuance of this warrant.

## II. Information to be seized by the government for the time period July 24, 2023, to current:

All information described in Section I that constitutes fruits, evidence, and instrumentalities of violations of federal criminal law, namely, 18 U.S.C. §§ 1153 and 1111, First and/or Second-Degree Murder in Indian Country, and 18 U.S.C. §§ 5031 *et seq.*, Juvenile Delinquency Act, involving the account "lilblackout" including information pertaining to the following matters:

a. Records relating to who created, used, accessed, or communicated with this account, including any records about their identities and whereabouts.

3

b. All data and information associated with the profile page, including photographs, videos, messages, conversations, "bios," and profile backgrounds and themes;

c. Credit card and other financial information, such as bills and payment records, either stored in the account, or such information relating to Meta-related purchases;

d. Evidence of the times the account described in Attachments A was used; and

e. Passwords and encryption keys and other associated accounts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

4